HOLLAND & KNIGHT LLP
737 Seventh. Ave, 31st Floor
New York, New York 10019
(212) 751-3001
Stuart J. Glick
Anthony F. Pirraglia

*Counsel for Wilmington Trust, National Association,
As Trustee For The Registered Holders Of LSTAR
Commercial Mortgage Trust 2017-5, Commercial
Mortgage Pass-Through Certificates, Series 2017-5*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X
:
In re:                                                                        :          Chapter 7
                                                                                     :
**WHITEHORSE 401, LLC,**                                    :          Case No. 24-42466 (ESS)
                                                                                     :
                                                    Debtor.           :
                                                                                     :
---------------------------------------------------------------X

       **WILMINGTON TRUST, NATIONAL ASSOCIATION'S, AS TRUSTEE FOR THE REGISTERED HOLDERS OF LSTAR COMMERCIAL MORTGAGE TRUST 2017-5, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2017-5, MOTION FOR ENTRY OF AN ORDER DISMISSING DEBTOR'S CHAPTER 11 CASE OR, ALTERNATIVELY, GRANTING RELIEF FROM THE AUTOMATIC STAY**

TO THE HONORABLE ELIZABETH S. STONG,
UNITED STATES BANKRUPTCY JUDGE:

   Wilmington Trust, National Association, as Trustee for the Registered Holders of LSTAR Commercial Mortgage Trust 2017-5, Commercial Mortgage Pass-Through Certificates, Series 2017-5 ("LSTAR"), hereby files this motion (the "Motion") for entry of an order (i) dismissing with prejudice the chapter 11 case of the above-captioned debtor, Whitehorse 401, LLC ("Whitehorse" or the "Debtor"), for cause as a "bad faith filing" pursuant to section 1112(b) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code"), or (ii) in the alternative, for relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code.

1

In support of the Motion, LSTAR attaches the (i) *Declaration of Stuart J. Glick, Esq. in Support of Motion for Entry of an Order Dismissing the Debtor's Chapter 11 Case or, Alternatively, Granting Relief from the Automatic Stay* (the "Glick Declaration") and (ii) the *Declaration of Laura P. Sims in Support of Motion for Entry of an Order Dismissing the Debtor's Chapter 11 Case or, Alternatively, Granting Relief from the Automatic Stay* (the "Sims Declaration"), and respectfully represents as follows:

## PRELIMINARY STATEMENT[1]

1. This chapter 11 case epitomizes a bad faith filing and represents the culmination of a year-long effort to prevent LSTAR, the Debtor's secured lender, from exercising its bargained for remedies after the Debtor defaulted on its obligations under its Loan Documents. After the Debtor defaulted by, among other things, failing to make a required mortgage loan payment in March 2023 (and for every month thereafter), LSTAR instituted a foreclosure action before the Court of Chancery in New Jersey seeking to enforce its security interest in certain real property owned by the Debtor. The Debtor failed to answer, and the state court entered a default judgment against Whitehorse. Subsequently, the Debtor made repeated attempts in state court to ward off foreclosure, including attempting to get the state court to recognize a late-filed answer, objecting to the amount of the judgment to be entered in LSTAR's favor, asking for post-default discovery, and seeking to raise defenses that it ought to have raised through a timely filed answer. The state court rejected these unmeritorious efforts and, in early May 2024, the state court entered an order which paved the way for the entry of a final judgment of foreclosure only for the Debtor to file for a single asset real estate chapter 11 proceeding in a last ditch attempt to avoid the consequences of its defaults.

---

[1] Capitalized terms used in this section but not otherwise defined herein shall have the meanings ascribed below.

2.      But the Debtor did not file for bankruptcy in good faith with an intent to reorganize. Remarkably, the Debtor fails to identify a single asset of the estate – not even the Property – and declines to identify LSTAR as a secured creditor (or even as a notice party), only acknowledging the existence of approximately $6,996,924.62 of disputed, unsecured debts.  In reality, the Debtor's only asset is the Property, which is worth approximately $5.1 million and is fully encumbered to secure the more than $13.36 million the Debtor owes LSTAR.  The Debtor's schedules and statement of financial affairs identify no assets, no revenue and no employees.  There is simply no business around which the Debtor can reorganize.

3.      For the reasons set forth below, the Debtor's bankruptcy proceeding should be dismissed for being commenced in bad faith.  Alternatively, the Court should lift the automatic stay to allow LSTAR to proceed with exercising remedies in the state court.

## JURISDICTION

4.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. The Motion is a core matter within the meaning of 28 U.S.C. § 157(b)(2).

5.      Venue of the Motion in this Court is proper pursuant to 28 U.S.C. § 1409.

6.      The statutory predicates for the relief requested herein are sections 105(a), 362(d) and 1112(b) of the Bankruptcy Code and related Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## RELEVANT BACKGROUND

### A. The Loan and Loan Documents

7.      On or about January 26, 2017, LSTAR Capital Finance II, Inc. ("Original Lender") loaned $12,950,000.00 (the "Loan") to Whitehorse to purchase real property located at 401 Whitehorse Road, Voorhees Township, NJ 08043 (the "Property").  The Loan is evidenced by that

certain Loan Agreement dated January 26, 2017, executed by and between Whitehorse and the Original Lender (as amended and/or assigned, the "Loan Agreement"). *See* Sims Decl. at Ex. A.

8. In connection with the Loan, Whitehorse executed that certain Promissory Note dated January 26, 2017 in the principal sum of $12,950,000.00 (as amended and/or assigned, the "Note"). *See* Sims Decl. at Ex. B. Repayment of the Note is secured by, among other things, that certain (i) Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (as amended and/or assigned, the "Mortgage," and together with the Loan Agreement and the Note, the "Loan Documents") dated January 26, 2017, executed by Whitehorse, as mortgagor, to Original Lender, as mortgagee (*see* Sims Decl. at Ex. C); and (ii) Assignment of Leases and Rents, dated as of January 26, 2017, executed by Whitehorse in favor of Original Lender (*see* Sims Decl. at Ex. D). Additionally, pursuant to the Mortgage, Whitehorse granted to the Original Lender a security interest in all of the fixtures and other personal property at the Property, which security interest was perfected by the filing of UCC-1 financing statements. *See* Sims Decl. at Ex. E.

9. As of the Petition Date, the Debtor was indebted to LSTAR in the amount of $13,362,850 under the Loan Documents. *See* Sims Decl. at p. 3.

10. On June 27, 2023, CBRE Valuation & Advisory Services issued an appraisal of the Property which valued it at approximately $5,100,000. *See* Sims Decl. at Ex. I.

11. In connection with the Loan, Whitehorse also provided a Borrower's Certification, which included, among other things, copies of the Debtor's organizational documents. *See* Sims Decl. at Ex. H.

12. On or about March 31, 2017, the Loan Documents and related documents were assigned from the Original Lender to LSTAR. *See* Sims Decl. at Ex. F.

**B. Debtor's Defaults Under the Loan Documents**

13. The Debtor defaulted on its obligations under the Loan Documents by, *inter alia*, failing to make a payment that came due on March 6, 2023, and by failing to make every subsequent payment that has come due thereafter.

14. On March 15, 2023, LSTAR declared the Loan in default in accordance with the terms of the Loan Documents and served Whitehorse with a Notice of Default (the "Original Notice of Default"). *See* Glick Decl. at Ex. A.

15. Thereafter, Whitehorse further defaulted under the Loan Documents by failing to (i) pay the monthly payments due for April and May 2023, and (ii) provide the documentation required to be provided under Section 5.1.10(b) of the Loan Agreement after it was requested by LSTAR.

16. On May 19, 2023, LSTAR sent Whitehorse a Notice of Continuing and Additional Default, Acceleration, and Reservation of Rights (the "Second Notice of Default"). *See* Glick Decl. at Ex. B.

17. On June 20, 2023, LSTAR sent Whitehorse a Notice of Continuing and Additional Default and Reservation of Rights (the "Third Notice of Default," collectively with the Original Notice of Default and the 2nd Notice of Default, the "Default Notices") providing notice of additional defaults under the Loan Documents resulting from Whitehorse's failure to pay the indebtedness in full by June 6, 2023, and further expounding upon Whitehorse's failure to comply with the reporting requirements under Section 5.1.10 of the Loan Agreement. *See* Glick Decl. at Ex. C.

18. On July 14, 2023, LSTAR filed the Foreclosure Complaint (the "Verified Complaint") in the Superior Court of New Jersey, Chancery Division, Camden County (the "State

Court") instituting an action assigned Docket No. F-8494-23 against Whitehorse and certain co-defendants based upon Whitehorse's defaults under the Loan Documents. *See* Glick Decl. at Ex. D.

19. On September 6, 2023, due to Whitehorse's failure to answer the Verified Complaint, LSTAR filed the Request to Enter Default Against Defendant Whitehorse LLC Pursuant to Rule: 4:43-1. *See* Glick Decl. at Ex. E.

20. On October 16, 2023, Whitehorse attempted to file an answer to the Verified Complaint, but Clerk of the New Jersey Superior Court rejected the filing because a default had been entered on September 6, 2023. *See* Glick Decl. at Ex. F.

21. On December 15, 2023, LSTAR filed its first Motion for Entry of Final Judgment (the "First Motion for Final Judgment") in the State Court, which was never ruled on. *See* Glick Decl. at Ex. G.

22. On December 20, 2023, Whitehorse objected to the First Motion for Final Judgment. *See* Glick Decl. at Ex. H.

23. To facilitate a prompt resolution of Whitehorse's objection, LSTAR withdrew the First Motion For Final Judgment specifically to address and resolve Whitehorse's objection, notwithstanding that LSTAR believed its motion to be proper. *See* Glick Decl. at Ex. I.

24. On March 7, 2024, LSTAR filed a second Motion for Entry of Final Judgment (the "Second Motion for Final Judgment") in the State Court. *See* Glick Decl. at Ex. J.

25. On March 18, 2024, Whitehorse filed an objection to the Second Motion for Final Judgment. *See* Glick Decl. at Ex. K.

26. On March 21, 2024, LSTAR responded to Whitehorse's objection to the Second Motion for Final Judgment. *See* Glick Decl. at Ex. L.

27. On April 2, 2024, LSTAR wrote the State Court requesting a hearing date for argument on the objection to the Second Motion for Final Judgment. *See* Glick Decl. at Ex. M.

28. On April 3, 2024, Whitehorse wrote the State Court requesting a case management conference to discuss the State Court's opening up the matter to permit discovery, including depositions, notwithstanding that it had never filed a timely answer nor moved to vacate the default entered against it. *See* Glick Decl. at Ex. M.

29. On April 4, 2024, LSTAR responded and objected to Whitehorse's attempt to further delay the foreclosure by expanding the limited grounds under New Jersey law to object to a motion for final judgment, i.e., the calculation of the amount due, to more substantive objections to the provisions of the underlying loan documents that Whitehorse could have raised in a timely filed answer (which Whitehorse had failed to file), as well as the underlying position Whitehorse asserted which was contrary to New Jersey Supreme Court precedent. *See* Glick Decl. at Ex. M.

30. On April 8, 2024, Whitehorse again wrote the State Court, and again raised the same unmeritorious and legally invalid positions it previously raised in its April 3, 2024 letter to the State Court. *See* Glick Decl. at Ex. M.

31. On April 9, 2024, LSTAR responded and again objected to Whitehorse's attempt to further delay the foreclosure. *See* Glick Decl. at Ex. M.

32. On May 7, 2024, the State Court heard oral argument on LSTAR's Second Motion for Final Judgment and Whitehorse's request to open the matter for discovery. The State Court overruled Whitehorse's objection and denied Whitehorse's request to open the matter for discovery.

33. On May 9, 2024, the State Court entered the Order to Transfer from Chancery Division to the Office of Foreclosure (the "Foreclosure Order") for entry of final judgment as per

LSTAR's Second Motion for Final Judgment to foreclose on the Property. *See* Glick Decl. at Ex. N.

34. On June 24, 2024, the Voorhees Township Fire Department (the "Voorhees FD") issued a "Notice of Imminent Hazard and Orders to Take Corrective Action" with respect to the Property, which identified the following violations of the Uniform Fire Code and asserted that these violations constituted an imminent hazard to public health, safety or welfare: (i) a deficient sprinkler system report; (ii) a deficient fire alarm report; and (iii) a missing NJ Life Hazard Certificate of Registration. *See* Sims Decl. at Ex. G. Corrective measures were not completed by 3:00 p.m. (ET) on July 1, 2024 as required by the Voorhees FD, and thus the Debtor is subject to penalties of up to $5,000 per day per violation for each day of continuing non-compliance.

### C. The Debtor's Bankruptcy Proceeding

35. On June 11, 2024 (the "Petition Date"), the Debtor filed (i) a voluntary petition under chapter 11 of the Bankruptcy Code; (ii) Schedules of Assets and Liabilities (the "Schedules"); and (iii) a Statement of Financial Affairs (the "SOFA"). *See* Dkt. No. 1. The Debtor failed to identify (i) any assets, including the Property (*see* Schedules at A/B); (ii) any secured debts, including LSTAR's mortgage debt (*see* Schedules at D); or (iii) any revenues over the last three years (*see* SOFA at Part 1).

36. The Debtor also has not filed, among other things, (i) a corporate resolution authorizing the bankruptcy filing in accordance with E.D.N.Y. LBR 1074-1(a); (ii) a declaration under penalty of perjury for non-individual debtors; (iii) the affidavit required by E.D.N.Y. LBR 1073-2(b); and (iv) the affidavit required by E.D.N.Y. LBR 1007-4. The Debtor was put on notice of these deficiencies and was directed to correct them by June 25, 2024, or else the Debtor's case would be subject to dismissal. *See* Dkt. No. 2.

37. As of the date hereof, the Debtor has not filed any other documents of substance.

## ARGUMENT

38. Cause exists to dismiss the Debtor's bankruptcy case as a bad faith filing pursuant to section 1112(b) of the Bankruptcy Code or, alternatively, to lift the automatic stay pursuant to section 362(d) of the Bankruptcy Code to allow LSTAR to continue legal proceedings against the Property.

**A. The Debtor's Chapter 11 Case Should Be Dismissed Pursuant to Section 1112(b) of the Bankruptcy Code.**

39. Section 1112(b) of the Bankruptcy Code, provides, in relevant part, that:

> On request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested . . . dismissal is not in the best interests of creditors and the estate, the court shall . . . dismiss a case under this chapter . . . if the movant establishes cause.

11 U.S.C. § 1112(b)(1).

40. It is well-settled that cause for dismissal under section 1112(b) includes that the debtor filed the case in bad faith or that the case demonstrates attributes of bad faith. *See In re C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1310-11 (2d Cir. 1997); *see also In re Syndicom Corp.*, 268 B.R. 26, 47-48 (Bankr. S.D.N.Y. 2001) ("[T]he filing of a bankruptcy petition on the eve of a foreclosure . . . is only one of several indicia that a court may appropriately look to in determining whether, under the totality of the circumstances, resort to the Bankruptcy Code has been in good faith, on the one hand, or inappropriate, on the other."). "Bad faith is not a concept that lends itself to precise definition. Th[e] court 'may consider any factor[] which evidence[s] an intent to abuse the judicial process and the purposes of the reorganization provisions' or, in particular, factors which evidence that the petition was filed 'to delay or frustrate the legitimate efforts of ... creditors to enforce their rights.'" *In re Syndicom*

*Corp.*, 268 B.R. 26, 49–50 (Bankr. S.D.N.Y. 2001) (internal citations omitted).

41. In determining whether a bankruptcy proceeding has been filed in bad faith, the court must look at the "totality of the circumstances." *In re Feldman*, 597 B.R. 448, 457 (Bankr. E.D.N.Y. 2019). The Second Circuit has found the following non-exhaustive list of eight factors to be indicative of a bad faith filing:

> (1) the debtor has only one asset; (2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors; (3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt; (4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action; (5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights; (6) the debtor has little or no cash flow; (7) the debtor can't meet current expenses including the payment of personal property and real estate taxes; and (8) the debtor has no employees.

*See In re C-TC*, 113 F.3d at 1311; *In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309, 334-35 (Bankr. S.D.N.Y. 2001).

42. Here, the *C-TC* factors point to the Debtor commencing this case in bad faith:

  i. The Debtor's only asset is the Property, which was on the verge of foreclosure. The impending sale of the Property is indicia of a bad faith filing. *See In re C-TC*, 113 F.3d at 1312 (finding bad faith where the debtor's only asset was the subject of a foreclosure action brought as a result of a default in the underlying mortgage).

  ii. The Debtor's financial condition essentially demonstrates that the impetus for the chapter 11 filing is a two party dispute between the Debtor and LSTAR, which can be resolved in state court. The Debtor owes LSTAR more than $13.36 million, which obligation is secured by a lien on the Property. A recent appraisal indicates that the Property is worth approximately $5.1 million. Accordingly, the Debtor has no assets which will accrete value to unsecured creditors—all of the value belongs to LSTAR, and thus this is effectively a two-party dispute between the Debtor and LSTAR.

  iii. The Debtor chose to file the bankruptcy petition to delay and frustrate LSTAR's legitimate efforts to foreclose on the Property. This is further indicia of bad faith. *See id*.

    iv.    The Debtor has little or no cash flow and no prospects of increased cash flow. *See* SOFA at Part 1 (listing no revenues for the past three years). This is further indicia of bad faith. *See Pleasant Pointe*, 139 B.R. at 832 (holding that the debtor having little or no cash flow is indicia of bad faith).

    v.    The Debtor cannot meet current expenses. The Debtor cannot pay property taxes or insurance expenses, and the Debtor cannot service the Loan. Further, the Debtor likely cannot afford to address the deficiencies identified by the Voorhees FD. A debtor's failure to pay expenses related to its assets is further indicia of bad faith. *See In re C-TC*, 113 F.3d at 1312 (holding that debtor's failure to pay expenses on its assets evidences a bad faith filing).

    vi.    Upon information and belief, the Debtor has no employees, which is further indicia of bad faith. *See In re D&G Constr. Dean Gonzalez, LLC*, 635 B.R. 232, 239 (Bankr. E.D.N.Y. 2021) (finding a lack of employees was indicia of a bad faith filing).

Thus, the majority of the Second Circuit's relevant indicia for a bad faith filing are present in this case.

43.    Additionally, "[w]hen it is clear that, from the date of filing, the debtor has no reasonable probability of emerging from the bankruptcy proceedings and no realistic chance of reorganizing, then the Chapter 11 petition may be frivolous. Further, 'an entity may not file a petition for reorganization which is solely designed to attack a judgment collaterally—the debtor must have some intention of reorganizing.'" *In re C-TC 9th Ave. P'ship*, 113 F.3d at 1310 (internal citations omitted). Here, the Debtor owns a vacant building and the Debtor has no reasonable prospect for reorganizing—there is no business to reorganize around. The Debtor filed for bankruptcy because of an adverse outcome in the State Court proceedings, which is not a proper purpose to file for bankruptcy.

44.    Moreover, the Debtor's omissions in the Schedules and SOFA are further evidence of bad faith. *See, e.g.*, *Feldman*, 597 B.R. at 457 ("A bankruptcy petition that 'contains deficiencies or inaccuracies meant to mislead the court' is evidence of bad faith warranting dismissal."). Despite being in the middle of litigation regarding foreclosure of the Property, the

Debtor ***does not list*** LSTAR's debt on its Schedules. Nor does the Debtor list the Property or the improvements thereon as an asset of the bankruptcy estate. There is no explanation for these oversights other than the Debtor's bad faith in preparing and filing for bankruptcy. As such, the Debtor's case should be dismissed as a bad faith filing.

45. Finally, the Debtor's bankruptcy petition and related filings do not comply with (i) E.D.N.Y. LBR 1007-4 (requiring an affidavit providing information about the Debtor's business and other information), (ii) E.D.N.Y. LBR 1073-2(b) (requiring a statement regarding related bankruptcy proceedings), or (iii) E.D.N.Y. LBR 1074-1 (requiring the filing of an attested copy of corporate resolutions authorizing the bankruptcy filing). *See* E.D.N.Y. LBR 1007-4, 1073-2(b), 1074-1. Further, the Debtor has not filed a declaration under penalty of perjury. *See* Dkt. No. 2. The Debtor failed to file the required documents with its bankruptcy petition, and has not corrected these omissions within the timeframe required by the Court. *See* Dkt. No. 2. Further, Michael Steiman, who signed the Debtor's voluntary petition for relief, does not appear to be authorized by the Debtor's corporate and organizational documents to place the Debtor into bankruptcy, which is another basis for dismissal (*see* Sims Decl. at Ex. H). *See, e.g.*, *In re Stavola/Manson Elec. Co., Inc.*, 94 B.R. 21, 26 (Bankr. D. Conn. 1988) (dismissing a bankruptcy case due to the filing not being authorized under the corporation's organizational documents).

46. At bottom, the Debtor has engaged in an effort to frustrate the legitimate collection efforts of its secured creditor, LSTAR. Accordingly, LSTAR respectfully submits that the Debtor's chapter 11 case must be dismissed pursuant to section 1112(b) of the Bankruptcy Code for cause as a bad faith filing. *See generally In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986) ("A good faith standard protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons . . . available only to those debtors and creditors with

'clean hands.'").

    **B.   In the Alternative, LSTAR Should be Granted Relief
    from the Automatic Stay Pursuant to Section 362(d) of the Bankruptcy Code.**

47. If the Court is not inclined to dismiss the chapter 11 case, the automatic stay should be modified under sections 362(d)(1) and 362(d)(2) of the Bankruptcy Code to grant relief from the stay to allow LSTAR to continue prosecuting the foreclosure proceedings against the Property.

48. As an initial matter, stay relief is warranted for "cause" under section 362(d)(1) of the Bankruptcy Code which provides that "the court shall grant relief from the stay . . . (1) for cause . . . ." 11 U.S.C. § 362(d)(1). The same factors which establish "cause" for a bad faith dismissal also establish "cause" to lift the automatic stay. *In re Sonnax Indust.*, 907 F.2d 1280, 1286 (2d Cir. 1990); *Little Creek*, 779 F.2d at 1072; *Phoenix Piccadilly*, 849 F.2d at 1394; *Manhattan King David Restaurant, Inc. v. Levine*, 163 B.R. 36, 40 (S.D.N.Y. 1993). As such, for the reasons set forth above, the Court may, and should, lift the stay by reason of the Debtor's bad faith even if the Court has concluded that the Debtor's bad faith is insufficient to dismiss the case altogether. *See In re Dixie Broadcasting, Inc.*, 871 F.2d 1023, 1029 (11th Cir. 1989); *Manhattan King David Restaurant*, 163 B.R. at 40.

49. Moreover, the Debtor's inability to adequately protect LSTAR's interest in the Property constitutes "cause" to lift the automatic stay. *See* 11 U.S.C. § 362(d)(1). Specifically, the Debtor is required to maintain the value of LSTAR's interest in the Property during the pendency of the bankruptcy. *See In re Island Helicopter Corp.*, 63 B.R. 809, 816 (Bankr. E.D.N.Y. 1986).

50. Here, the Schedules and SOFA reflect that the Debtor has no cash and is not generating any revenue. Nevertheless, even if the Debtor was able to generate revenue during the case, such revenue would constitute LSTAR's collateral as LSTAR has liens on and security

interests in any rents received by the Debtor. *See* Sims Decl. at Exs. C, D. Consequently, the Debtor cannot make payments necessary to remedy myriad health and safety issues at the Property, which may give rise to fees and penalties.

51. Hence, the Property is at significant risk of loss, the Debtor lacks resources to mitigate that risk, and therefore LSTAR is not adequately protected under the circumstances. That alone precludes the Debtor from adequately protecting LSTAR's interest and constitutes cause for stay relief. *See In re Shivshankar P'ship LLC*, 517 B.R. 812, 820 (Bankr. E.D. Tenn. 2014) (finding that a creditor was not adequately protected when the creditor's collateral was in disrepair and the debtor was unable to maintain it); *see also In re Balco Equities Ltd., Inc.*, 312 B.R. 734, 749–50 (Bankr. S.D.N.Y. 2004) (lifting the stay because the debtor was unable to provide adequate protection, which included paying for maintenance of the secured creditor's collateral); *see also* Sims Decl. at Ex. G.

52. Similarly, even assuming the Debtor had cash to address the immediate health and safety issues at the Property, the Debtor has no revenue, or prospects, that suggest an ability to commence mandatory monthly payments to LSTAR by September 9 (i.e., 90-days after the Petition Date), as required under section 362(d)(3) of the Bankruptcy Code.

53. Finally, cause exists to lift the stay pursuant to section 362(d)(2) of the Bankruptcy Code, which states that "the court shall grant relief from the stay . . . with respect to a stay of an act against property . . . if (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2). Here, both prongs of 362(d)(2) are clearly satisfied.

54. First, the Debtor does not have equity in the Property. *See* Sims Decl. at Ex. I. Approximately one year ago, the property was appraised at $5.1 million, and the Property is

encumbered by a lien in favor of LSTAR to secure more than $13.36 million in debt. *See* Sims Decl. at p. 3.

55. Second, the Property is not necessary for an effective reorganization because there is no business to reorganize. The burden is on the Debtor to establish that there is a reasonable likelihood that a plan may be confirmed. *See, e.g.*, *In re Pegasus Agency, Inc.*, 186 B.R. 597, 602 (Bankr. S.D.N.Y. 1995). As discussed above, the Debtor has no tenants, no revenue, no employees and no assets other that the Property in which it has no equity. *See, e.g.*, Schedules; SOFA. The bankruptcy case is nothing more than a litigation tactic, not a legitimate attempt at a reorganization. Therefore, cause exists under section 362(d)(2) of the Bankruptcy Code to lift the automatic stay.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, LSTAR respectfully requests that the Court enter (i)(a) an order dismissing the Debtor's chapter 11 case, or in the alternative, (b) an order modifying and lifting the automatic stay to enable LSTAR to proceed with the foreclosure proceedings, and (ii) granting LSTAR such other and further relief as may be just and proper.

Dated: New York, New York
      July 8, 2024

                                    Respectfully submitted,

                                    HOLLAND & KNIGHT LLP
                                  *Counsel to LSTAR*

                                  By:
                                  /s/  *Stuart J. Glick*
                                  Stuart J. Glick
                                  Anthony F. Pirraglia
                                  737 Seventh. Ave, 31st Floor
                                  New York, New York 10019
                                  (212) 751-3001
                                  stuart.glick@hklaw.com
                                  anthony.pirraglia@hklaw.com