OPERATING AGREEMENT

OF

WHITEHORSE 401 LLC

OPERATING AGREEMENT OF WHITEHORSE 401 LLC (this "**Agreement**") dated as of December 1, 2016, entered into by Yechiel Rivlin (the "**Sole Member**").

Preliminary Statement

WHEREAS, the Sole Member formed WHITEHORSE 401 LLC (the "**Company**"), as a limited liability company under the Delaware Limited Liability Company Act, as amended from time to time (the "**Act**") by the filing of the Certificate of Formation of the Company with the Secretary of State of the State of Delaware;

NOW, THEREFORE, in consideration of the mutual promises made herein, the parties hereto hereby agree as follows:

1. Name. The name of the Company is " WHITEHORSE 401 LLC."

2. Purpose. Subject to Section 16, the purpose to be conducted or promoted by the Company is to engage in the following activities:

    (a) to acquire fee title to the land and buildings located at 401 Whitehorse Road, Voorhees Township, New Jersey (the "**Property**");

    (b) to borrow from LSTAR CAPITAL FINANCE II, INC., a Delaware corporation (together with its successors and/or assigns, "**Lender**"), the sum of approximately $12,950,000.00 secured by a Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "**Security Agreement**") dated as of the Closing Date on the Property and to enter into and perform all of the Company's obligations under the Loan Documents;

    (c) to own, develop, hold, finance, refinance, lease, transfer, operate, maintain, dispose of and otherwise deal with all or any part of the Property, subject to the terms of this Agreement; and

    (d) to engage in any lawful act or activity and to exercise any powers permitted to limited liability companies organized under the laws of the State of Delaware that are related or incidental to and necessary, convenient or advisable for the accomplishment of the above-mentioned purposes.

3. Management of the Company. The Sole Member is hereby duly appointed as Manager of the Company. The Company shall be managed by the Manager. The Sole Member shall have the exclusive power and authority, in its capacity of

        Manager of the Company, to take any action of any kind not inconsistent with the provisions of this Agreement and to do anything and everything it deems necessary or appropriate to carry on the business and purposes of the Company.

4.     <u>Membership Interests</u>.

    (a)     <u>Sole Member</u>. All of the membership interests in the Company for distributions and allocations shall be held by the Sole Member.

    (b)     <u>Special Member</u>.

        (A)     Upon the occurrence of any event that causes the last remaining member of the Company ("**Member**") to cease to be the member of the Company (other than (1) upon an assignment by Member of all of its limited liability company interest in the Company and the admission of the transferee in accordance with the Loan Documents and this Agreement, or (2) the resignation of Member and the admission of an additional member of the Company in accordance with the terms of the Loan Documents and this Agreement), any person executing this Agreement as a "Special Member" shall, without any action of any other Person and simultaneously with the Member ceasing to be the member of the Company, automatically be admitted to the Company ("**Special Member**") and shall continue the Company without dissolution and (B) Special Member may not resign from the Company or transfer its rights as Special Member unless a successor Special Member has been admitted to the Company as Special Member in accordance with requirements of Delaware law. Additionally, (v) Special Member shall automatically cease to be a member of the Company upon the admission to the Company of a substitute Member, (w) Special Member shall be a member of the Company that has no interest in the profits, losses and capital of the Company and has no right to receive any distributions of the Company assets, (x) pursuant to Section 18-301 of the Act, Special Member shall not be required to make any capital contributions to the Company and shall not receive a limited liability company interest in the Company, (y) Special Member, in its capacity as Special Member, may not bind the Company and (z) except as required by any mandatory provision of the Act, Special Member, in its capacity as Special Member, shall have no right to vote on, approve or otherwise consent to any action by, or matter relating to, the Company, including, without limitation, the merger, consolidation or conversion of the Company. In order to implement the admission to the Company of Special Member, Special Member shall execute a counterpart to this Agreement. Prior to its admission to the Company as Special Member, Special Member shall not be a member of the Company.

2

    (B)    Upon the occurrence of any event that causes the Member to cease to be a member of the Company, to the fullest extent permitted by law, the personal representative of Member shall, within ninety (90) days after the occurrence of the event that terminated the continued membership of Member in the Company, agree in writing (1) to continue the Company and (2) to the admission of the personal representative or its nominee or designee, as the case may be, as a substitute member of the Company, effective as of the occurrence of the event that terminated the continued membership of Member of the Company in the Company. Any action initiated by or brought against Member or Special Member under any Creditors Rights Laws shall not cause Member or Special Member to cease to be a member of the Company and upon the occurrence of such an event, the business of the Company shall continue without dissolution. Each of Member and Special Member waives any right it might have to agree in writing to dissolve the Company upon the occurrence of any action initiated by or brought against Member or Special Member under any Creditors Rights Laws, or the occurrence of an event that causes Member or Special Member to cease to be a member of the Company.

5.    Dissolution. Subject to Section 16, the Company shall be dissolved and its affairs shall be wound up upon the written election of the Sole Member or in accordance with the Act.

6.    Distributions and Allocations. All distributions by the Company shall be made to the Sole Member. All allocations of profit and losses shall be made to the Sole Member.

7.    Liability of the Sole Member. The Sole Member shall not have any liability for the obligations or liabilities of the Company except to the extent expressly provided in the Act.

8.    Resignation. So long as any Obligation is outstanding, Member may not resign, except as permitted under the Basic Documents. If Member is permitted to resign pursuant to this Section 8, an additional member of the Company shall be admitted to the Company upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement, which instrument may be a counterpart signature page to this Agreement. Such admission shall be deemed effective immediately prior to the resignation and, immediately following such admission, the resigning Member shall cease to be a member of the Company.

9.    Admission of Additional Members. One or more additional Members of the Company may be admitted to the Company with the written consent of Member; provided, however, that, notwithstanding the foregoing, so long as any Obligation

remains outstanding, no additional Member may be admitted to the Company, except as permitted under the Basic Documents .

10. Benefits of Agreement. None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditor of the Company or of the Sole Member other than Lender.

11. Headings. The titles of sections of this Agreement are for convenience of reference only and shall not define or limit any of the provisions of this Agreement.

12. Governing Law. This Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware, without giving effect to conflicts of law principles of such state.

13. Amendments. This Agreement may be amended only by written instrument executed by the Sole Member, provided, however, this Agreement may not be amended without the prior written consent of Lender while any portion of, or any obligation pursuant to, the Loan (as hereinafter defined) remains outstanding.

14. Entire Agreement. This Agreement constitutes the entire agreement of the Sole Member relating to the Company with respect to the subject matter hereof and supersedes any and all prior contracts or agreements with respect to the subject matter hereof, whether oral or written.

15. Counterparts and Facsimile. This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall constitute one and the same instrument. All signatures to this Agreement may be delivered via facsimile or PDF and each such signature shall be considered an original signature.

16. Limitations on the Company's Activities. This Section 16 is being adopted in order to comply with certain provisions required in order to qualify the Company as a single purpose entity. The Company covenants and agrees that it has not and shall not:

   (a) engage in any business or activity other than the acquisition, development, ownership, operation, leasing, managing and maintenance of the property known as and by 401 Whitehorse Road, Voorhees Township, NJ 08043 (the "**Property**"), and entering into the loan made by LSTAR CAPITAL FINANCE II, INC. ("**Lender**") to the Company (the "**Loan**"), and activities incidental thereto;

   (b) acquire or own any material assets other than (i) the Property, and (ii) such incidental personal property as may be necessary for the operation of the Property;

(c) merge into or consolidate with any individual or entity ("**Person**") or dissolve, terminate or liquidate in whole or in part, transfer or otherwise dispose of all or substantially all of its assets or change its legal structure;

(d) (i) fail to observe its organizational formalities or preserve its existence as an entity duly organized, validly existing and in good standing (if applicable) under the laws of the jurisdiction of its organization or formation, and qualification to do business in the State where the Property is located, if applicable, or (ii) without the prior written consent of Lender, amend, modify, terminate or fail to comply with the provisions of this Agreement, the Certificate of Formation or similar organizational documents, as the case may be, whichever is applicable;

(e) other than Principal's ownership interest in the Company, own any subsidiary or make any investment in, any Person without the prior written consent of Lender;

(f) commingle its assets with the assets of any of its members, general partners, affiliates, principals or of any other Person, participate in a cash management system with any other Person or fail to use its own separate stationery, telephone number, invoices and checks;

(g) incur any debt, secured or unsecured, direct or contingent (including guaranteeing any obligation), other than the debt associated with the Loan (the "**Debt**"), except for unsecured trade payables in the ordinary course of its business of owning and operating the Property, provided that such debt (i) is not evidenced by a note, (ii) is paid within sixty (60) days of the date incurred, (iii) does not exceed, in the aggregate, two percent (2%) of the outstanding principal balance of the Note evidencing the Loan (the "**Note**") and (iv) is payable to trade creditors and in amounts as are normal and reasonable under the circumstances and with respect to Principal, incur any debt secured or unsecured, direct or contingent (including guaranteeing any obligations);

(h) to the extent the Property produces sufficient revenue, become insolvent and fail to pay its debts and liabilities (including, as applicable, shared personnel and overhead expenses) from its assets as the same shall become due;

(i) (i) fail to maintain its records (including financial statements), books of account and bank accounts separate and apart from those of the members, general partners, principals and Affiliates of the Company or of Principal, as the case may be, the Affiliates of a member, general partner or principal of the Company or of Principal, as the case may be, and any other Person, (ii) permit its assets or liabilities to be listed as assets or liabilities on the financial statement of any other Person or (iii) include the assets or liabilities of any other Person on its financial statements;

5

(j)      enter into any contract or agreement with any member, general partner, principal or affiliate of the Company or of Principal, as the case may be, Guarantor, or any member, general partner, principal or affiliate thereof (other than a business management services agreement with an affiliate of the Company, provided that (i) such agreement is acceptable to Lender, (ii) the manager, or equivalent thereof, under such agreement holds itself out as an agent of the Company and (iii) the agreement meets the standards set forth in this subsection (j) following this parenthetical), except upon terms and conditions that are commercially reasonable, intrinsically fair and substantially similar to those that would be available on an arms-length basis with third parties other than any member, general partner, principal or affiliate of the Company or of Principal, as the case may be, Guarantor or any member, general partner, principal or affiliate thereof;

(k)      seek the dissolution or winding up in whole, or in part, of the Company or of Principal, as the case may be;

(l)      fail to correct any known misunderstandings regarding the separate identity of the Company, or of Principal, as the case may be, or any member, general partner, principal or affiliate thereof or any other Person;

(m)      guarantee or become obligated for the debts of any other Person or hold itself out to be responsible for the debts of another Person;

(n)      make any loans or advances to any third party, including any member, general partner, principal or affiliate of the Company or of Principal, as the case may be, or any member, general partner, principal or affiliate thereof, and shall not acquire obligations or securities of any member, general partner, principal or affiliate of the Company or Principal, as the case may be, or any member, general partner, or affiliate thereof;

(o)      fail to file its own tax returns or be included on the tax returns of any other Person except as required by applicable law;

(p)      fail either to hold itself out to the public as a legal entity separate and distinct from any other Person or to conduct its business solely in its own name or a name franchised or licensed to it by an entity other than an Affiliate of the Company or of Principal, as the case may be, and not as a division or part of any other entity in order not (i) to mislead others as to the identity with which such other party is transacting business, or (ii) to suggest that the Company or Principal, as the case may be, is responsible for the debts of any third party (including any member, general partner, principal or Affiliate of the Company, or of Principal, as the case may be, or any member, general partner, principal or Affiliate thereof);

(q) to the extent the Property produces sufficient revenue, fail to maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and in light of its contemplated business operations;

(r) share any common logo with or hold itself out as or be considered as a department or division of (i) any general partner, principal, member or Affiliate of the Company or of Principal, as the case may be, (ii) any Affiliate of a general partner, principal or member of the Company or of Principal, as the case may be, or (iii) any other Person;

(s) fail to allocate fairly and reasonably any overhead expenses that are shared with an Affiliate, including paying for office space and services performed by any employee of an Affiliate;

(t) pledge its assets for the benefit of any other Person, and with respect to the Company, other than with respect to the Loan;

(u) fail to maintain a sufficient number of employees in light of its contemplated business operations;

(v) for so long as the Loan is outstanding pursuant to the Note, this Agreement and the other Loan Documents, file or consent to the filing of any petition, either voluntary or involuntary, to take advantage of any applicable insolvency, bankruptcy, liquidation or reorganization statute, or make an assignment for the benefit of creditors without the affirmative vote of all general partners/managing members/directors;

(w) fail to hold its assets in its own name;

(x) if the Company or Principal is a corporation, fail to consider the interests of its creditors in connection with all corporate actions to the extent permitted by Applicable Law; or

(y) have any of its obligations guaranteed by an Affiliate except Guarantor in connection with the Loan.

*Remainder of this page intentionally blank.*

7

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the date first above written.

**SOLE MEMBER:**

_____
Yechiel Rivlin

**SPECIAL MEMBER:**

_____
David Augenstein

8

## Schedule A

The following defined terms shall have the meanings set forth below. All defined terms used but not otherwise defined herein shall have the meaning given in the Loan Agreement.

1. "Basic Documents" means this Agreement, the Loan Documents and all documents and certificate contemplated by or delivered in connection with the Loan, each as may be amended, replaced, supplemented, amended and restated or otherwise modified from time to time.

2. "Creditors Rights Laws" means with respect to any Person, any existing or future law of any jurisdiction, domestic or foreign, relating to bankruptcy, insolvency, reorganization, conservatorship, arrangement, adjustment, winding-up, liquidation, composition or other relief with respect to its debts or debtors, including, without limitation, Title 11 of the United States Code, 11 U.S.C. §101 et seq., as the same may be amended from time to time, and any successor statute or statues and all rules and regulations from time to time promulgated thereunder.

3. "Loan Agreement" means that certain Loan Agreement between Lender and the Company in the principal sum of $[_____] dated as of [_____], 2016, as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time.

4. "Loan Documents" shall have the meaning ascribed thereto in the Loan Agreement.

5. "Note" shall have the meaning ascribed thereto in the Loan Agreement.

6. "Obligation" shall mean the indebtedness, liabilities and obligations of the Company under or in connection with the Loan Documents or any related document in effect as of any date of determination.